**FILED**
CLERK, U.S. DISTRICT COURT

02/08/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

1  TRACY L. WILKISON
   Acting United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   JOSEPH T. MCNALLY (Cal. Bar No. 250289)
4  BILL JOE MCLAIN (Cal. Bar. No. 290682)
   Assistant United States Attorney
5       United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: 213-894-2400
7       Facsimile: 213-894-2275
        E-mail:   joseph.mcnally@usdoj.gov
8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

9

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. 8:21-cr-00011-CJC

13          Plaintiff,               PLEA AGREEMENT FOR DEFENDANT LYNN
                                     KNEE
14              v.

15  LYNN KNEE,

16          Defendant.

17

18       1.   This constitutes the plea agreement between LYNN KNEE

19  ("defendant") and the United States Attorney's Office for the Central

20  District of California ("the USAO") in the above-captioned case.

21  This agreement is limited to the USAO and cannot bind any other

22  federal, state, local, or foreign prosecuting, enforcement,

23  administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS
24
         2.   Defendant agrees to:
25
              a.   Give up the right to indictment by a grand jury and,
26
    at the earliest opportunity requested by the USAO and provided by the
27
    Court, appear and plead guilty to a single count information in the
28

form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with conspiracy, in violation of 18 U.S.C. § 371.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   At or before the time of sentencing, satisfy any and all restitution/fine obligations based on ability to pay by delivering a certified check or money order to the Fiscal Clerk of the Court, to be held until the date of sentencing and, thereafter, applied to satisfy defendant's restitution/fine balance.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, 11th Floor, Los Angeles, California 90012.

h.   Ability to pay shall be assessed based on the Financial Disclosure Statement, referenced below, and all other relevant information relating to ability to pay.

i.   Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately.

The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

  j. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

  k. Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

  l. Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

  3. Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation ("FBI"), Department of Health and Human Services ("HHS-OIG") and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

  a. Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

  b. Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4.    For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

<u>THE USAO'S OBLIGATIONS</u>

5.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1001, 1341, and 1343 arising out of defendant's conduct described in the agreed-to factual basis of the plea agreement set forth in paragraph 14.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct

1  or any unlawful conduct that occurs after the date of this agreement.

2  Defendant agrees that at the time of sentencing the Court may

3  consider the uncharged conduct in determining the applicable

4  Sentencing Guidelines range, the propriety and extent of any

5  departure from that range, and the sentence to be imposed after

6  consideration of the Sentencing Guidelines and all other relevant

7  factors under 18 U.S.C. § 3553(a).

8       e.   Recommend that defendant be sentenced to a term of

9  imprisonment no higher than the low end of the applicable Sentencing

10  Guidelines range provided that the Court determines the total offense

11  level is 23 or higher.

12       6.   The USAO further agrees:

13       a.   Not to offer as evidence in its case-in-chief in the

14  above-captioned case or any other criminal prosecution that may be

15  brought against defendant by the USAO, or in connection with any

16  sentencing proceeding in any criminal case that may be brought

17  against defendant by the USAO, any Cooperation Information.

18  Defendant agrees, however, that the USAO may use both Cooperation

19  Information and Plea Information: (1) to obtain and pursue leads to

20  other evidence, which evidence may be used for any purpose, including

21  any criminal prosecution of defendant; (2) to cross-examine defendant

22  should defendant testify, or to rebut any evidence offered, or

23  argument or representation made, by defendant, defendant's counsel,

24  or a witness called by defendant in any trial, sentencing hearing, or

25  other court proceeding; and (3) in any criminal prosecution of

26  defendant for false statement, obstruction of justice, or perjury.

27       b.   Not to use Cooperation Information against defendant

28  at sentencing for the purpose of determining the applicable guideline

range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.   If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

7.   Defendant understands the following:

a.   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.   Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory

1  authority to accept any cooperation or assistance that defendant may

2  offer, or to use it in any particular way.

3          c.   Defendant cannot withdraw defendant's guilty plea if

4  the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a

5  reduced guideline range or if the USAO makes such a motion and the

6  Court does not grant it or if the Court grants such a USAO motion but

7  elects to sentence above the reduced range.

8          d.   At this time the USAO makes no agreement or

9  representation as to whether any cooperation that defendant has

10 provided or intends to provide constitutes or will constitute

11 substantial assistance.  The decision whether defendant has provided

12 substantial assistance will rest solely within the exclusive judgment

13 of the USAO.

14         e.   The USAO's determination whether defendant has

15 provided substantial assistance will not depend in any way on whether

16 the government prevails at any trial or court hearing in which

17 defendant testifies or in which the government otherwise presents

18 information resulting from defendant's cooperation.

19                        <u>NATURE OF THE OFFENSE</u>

20     8.   Defendant understands that for defendant to be guilty of

21 the crime charged in the single-count information, that is,

22 conspiracy to commit crimes against the United States, in violation

23 of Title 18, United States Code, Section 371, the following must be

24 true: (1) there was an agreement between two or more persons to

25 commit a crime against the United States; (2) the defendant became a

26 member of the conspiracy knowing of at least one of its objects and

27 intending to help accomplish it; and (3) one of the members of the

28

conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

9.    The elements for wire fraud, in violation of Title 18, United States Code, Section 1343, one of the objects of the conspiracy charged in the information, are: (1) the defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations; (2) the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.  The elements for use of an interstate facility in aid of bribery, in violation of Title 18, United States Code, Section 1952(a)(3), the other object of the conspiracy charged in the information, are: (1) defendant used the mail or a facility of interstate commerce with the intent to promote, manage, establish, or carry on, or facilitate the promotion, management, establishment, or carrying on, of unlawful activity, specifically payment and receipt of kickbacks in violation of California Insurance Code § 750; and (2) after doing so, defendant performed or attempted to perform an act to promote, manage, establish, or carry on, or facilitate the promotion, management, establishment, or carrying on, of such unlawful activity.

## PENALTIES AND RESTITUTION

10.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States

Code, Section 371, is: 5 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.  Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is $38,000, but recognize and agree that this amount could change based on information that comes to the attention of the parties prior to sentencing.

12.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the

offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

14.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

1

<u>FACTUAL BASIS</u>

2   15.  Defendant admits that defendant is, in fact, guilty of the

3   offense to which defendant is agreeing to plead guilty.  Defendant

4   and the USAO agree to the statement of facts provided below and agree

5   that this statement of facts is sufficient to support a plea of

6   guilty to the charge described in this agreement and to establish the

7   Sentencing Guidelines factors set forth in paragraph 17 below but is

8   not meant to be a complete recitation of all facts relevant to the

9   underlying criminal conduct or all facts known to either party that

10  relate to that conduct.

11  Defendant owned and operated "Parent Team."  Parent Team was

12  based in Petaluma, California, and provided referral services to

13  individuals who were seeking alcohol and drug treatment.  Using

14  online advertisements and other means, Parent Team solicited

15  individuals ("prospective patients") or the parents of prospective

16  patients who needed alcohol and drug treatment.  After prospective

17  patients contacted Parent Team, Parent Team referred the prospective

18  patients to alcohol and drug treatment centers, including

19  Organization A and Organization B, in exchange for kickbacks from the

20  treatment centers.  The amount of the kickbacks ranged from

21  approximately $2,000 to $7,500 per patient.  Defendant and her co-

22  conspirators knew that these kickbacks were illegal.

23  At times, prospective patients did not have insurance.

24  Defendant procured insurance policies for these prospective patients.

25  To qualify the prospective patients, defendant made false statements

26  and caused others to make false statements on the insurance

27  applications.  Defendant directed others to use false addresses on

28  the insurance applications, falsely stated that the prospective

1  patients had a qualifying event that qualified them for immediate

2  coverage, and falsified the prospective patients' income.  When

3  insurance companies asked for documentation to substantiate claims in

4  the applications, defendant directed others to create fraudulent

5  documentation, including utility and cable bills, and submitted the

6  documentation to insurance companies.  The false statements on the

7  insurance applications were material because the insurance companies

8  relied on the information in determining whether to approve the

9  application and pay the claims.

10       In furtherance of the conspiracy, defendant and her co-

11  conspirators acting at her direction engaged in the following acts:

12       In or around July 2017, defendant and co-conspirator Josh

13  Travers met with the owner and employees of Entity A in Orange

14  County, California.  Defendant agreed to provide insured patients to

15  Entity A, and Entity A agreed to pay defendant $7,000 per patient.

16  In August 2017, Entity A provided defendant a sham marketing

17  agreement that purported to pay $7,000 per marketing hour.  As

18  defendant knew, the contract was a sham, did not reflect the true

19  arrangement, and was created to cover up the kickback payments from

20  Entity A to Parent Team.  In 2017, defendant sent approximately 140

21  patients to Entity A and received $7,000 in kickbacks for each

22  patient referred.  Entity A presented claims to insurance companies

23  for services performed on patients referred via kickbacks.

24       In or around March 2017, defendant, through her company Parent

25  Team, worked with an insurance broker to obtain insurance policies

26  for 20 individuals who defendant intended to send to a treatment

27  center in exchange for a kickback.  Defendant and the broker obtained

28  the policies through Pacific Source and then referred the patients to

a treatment facility that paid $100,000 for the patient referrals.
On the applications for insurance, defendant and others acting at her
direction falsely stated, among other things, the applicants'
addresses.  In or around April 2017, Pacific Source asked for
documentation to substantiate information on the applications.
Defendant, and co-conspirators Guillermo Ganir, Josh Travers, and
others agreed to create false documents, including false cable and
utility bills, to substantiate the false information.  On or about
April 24, 2017, defendant sent an email to her criminal partners in
which she explained that she was "nervous about this proof of address
requirement" and stated that Josh Travers had talked to Individual A
about "the cable bill which is good to have, but probably a ton of
work."  Defendant was referencing the fact that Josh Travers had
worked with Individual A to create fraudulent cable bills to
substantiate the false addresses on the applications and that
creating the fraudulent cable bills was a lot of work.

On or about April 26, 2017, defendant and other co-conspirators
caused the submission of an insurance application for D.H. to Pacific
Source that falsely stated that D.H. resided at XX Rosebud Rd.,
Absarokee, MT 59001.  To substantiate the false statement, defendant
and her co-conspirators agreed to create a fake utility bill
purporting to be from a water company that listed the Rosebud Rd.
address as D.H.'s address, and on May 9, 2017, sent the fake bill via
an interstate email from California to Oregon.  On May 18, 2017,
defendant and co-conspirators caused a false lease agreement to be
sent to Pacific source on behalf of D.H.

On or about March 31, 2017, defendant and other co-conspirators
caused the submission of an insurance application for S.C. to Pacific

13

1  Source that falsely stated that S.C. resided at XXXXX Leisure Lane,
2  Beavercreek, OR 97004.  To substantiate the false statement,
3  defendant and other co-conspirators agreed to create a fake utility
4  bill purporting to be from a water company that listed the Leisure
5  Lane address as S.C.'s address, and on June 1, 2017, sent the fake
6  bill via an interstate email from California to Oregon.  On June 1,
7  2017, defendant and her co-conspirators caused a false lease
8  agreement for S.C. to be sent to Pacific source.

9      On or about April 26, 2017, defendant and her co-conspirators
10 caused the submission of an insurance application for T.B. to Pacific
11 Source that falsely stated that T.B. resided at XXX W. Grove Street,
12 Absarokee, MT 59001.  To substantiate the false statement, defendant
13 and her co-conspirators agreed to create a fraudulent rental
14 agreement that listed the Grove Street address as T.B.'s address, and
15 on May 19, 2017, sent the fraudulent rental agreement via an
16 interstate email from California to Oregon.

17     The false statements on the applications, including the false
18 addresses and qualifying events, were material to Pacific Source in
19 that they had a natural tendency to influence and were capable of
20 influencing  its decision to issue the insurance policies and if
21 issued, the type of policies it issued, and to obligate Pacific
22 Source to pay money under the policies.  The fraudulent policies
23 resulted in billings to Pacific Source of approximately $5.8 million
24 dollars.

25                        SENTENCING FACTORS

26     16.  Defendant understands that in determining defendant's
27 sentence the Court is required to calculate the applicable Sentencing
28 Guidelines range and to consider that range, possible departures

                                14

under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

17. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1 |
| Specific Offense Characteristics | | |
| Loss: | 18 | U.S.S.G. § 2B1.1(b)(1)(I) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

18. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.    The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel – and if necessary have the Court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF VENUE</u>

21.   Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offense to which defendant is pleading guilty, to the extent the offense to which defendant is pleading guilty were committed, begun, or completed outside the Central District of California, defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the

district where the offense to which defendant is pleading guilty were committed, begun, or completed and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offense to which defendant is pleading guilty.

WAIVER OF APPEAL OF CONVICTION

22. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

23. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than the Guidelines range for an offense level of 23 and the criminal history category determined by the Court, defendant gives up the right to appeal all of the following, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the

statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than the Guidelines range for an offense level of 24 and the criminal history category determined by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following the amount of restitution ordered.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

25.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation

Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

26. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO will be released from all its obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

27. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

28. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement. All of defendant's obligations are material, a single breach of this

1  agreement is sufficient for the USAO to declare a breach, and

2  defendant shall not be deemed to have cured a breach without the

3  express agreement of the USAO in writing.  If the USAO declares this

4  agreement breached, and the Court finds such a breach to have

5  occurred, then:

6         a.    If defendant has previously entered a guilty plea

7  pursuant to this agreement, defendant will not be able to withdraw

8  the guilty plea.

9         b.    The USAO will be relieved of all its obligations under

10 this agreement; in particular, the USAO: (i) will no longer be bound

11 by any agreements concerning sentencing and will be free to seek any

12 sentence up to the statutory maximum for the crime to which defendant

13 has pleaded guilty; (ii) will no longer be bound by any agreements

14 regarding criminal prosecution, and will be free to criminally

15 prosecute defendant for any crime, including charges that the USAO

16 would otherwise have been obligated not to criminally prosecute

17 pursuant to this agreement; and (iii) will no longer be bound by any

18 agreement regarding the use of Cooperation Information and will be

19 free to use any Cooperation Information in any way in any

20 investigation, criminal prosecution, or civil, administrative, or

21 regulatory action.

22        c.    The USAO will be free to criminally prosecute

23 defendant for false statement, obstruction of justice, and perjury

24 based on any knowingly false or misleading statement by defendant.

25        d.    In any investigation, criminal prosecution, or civil,

26 administrative, or regulatory action: (i) defendant will not assert,

27 and hereby waives and gives up, any claim that any Cooperation

28 Information was obtained in violation of the Fifth Amendment

privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

29. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

30. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing

1    recommendations or the parties' agreements to facts or sentencing

2    factors.

3        31.   Defendant understands that both defendant and the USAO are

4    free to: (a) supplement the facts by supplying relevant information

5    to the United States Probation and Pretrial Services Office and the

6    Court, (b) correct any and all factual misstatements relating to the

7    Court's Sentencing Guidelines calculations and determination of

8    sentence, and (c) argue on appeal and collateral review that the

9    Court's Sentencing Guidelines calculations and the sentence it

10   chooses to impose are not error, although each party agrees to

11   maintain its view that the calculations in paragraph 17 are

12   consistent with the facts of this case.  While this paragraph permits

13   both the USAO and defendant to submit full and complete factual

14   information to the United States Probation and Pretrial Services

15   Office and the Court, even if that factual information may be viewed

16   as inconsistent with the facts agreed to in this agreement, this

17   paragraph does not affect defendant's and the USAO's obligations not

18   to contest the facts agreed to in this agreement.

19       32.   Defendant understands that even if the Court ignores any

20   sentencing recommendation, finds facts or reaches conclusions

21   different from those agreed to, and/or imposes any sentence up to the

22   maximum established by statute, defendant cannot, for that reason,

23   withdraw defendant's guilty plea, and defendant will remain bound to

24   fulfill all defendant's obligations under this agreement.  Defendant

25   understands that no one -- not the prosecutor, defendant's attorney,

26   or the Court -- can make a binding prediction or promise regarding

27   the sentence defendant will receive, except that it will be within

28   the statutory maximum.

1                       NO ADDITIONAL AGREEMENTS

2        33.   Defendant understands that, except as set forth herein,

3   there are no promises, understandings, or agreements between the USAO

4   and defendant or defendant's attorney, and that no additional

5   promise, understanding, or agreement may be entered into unless in a

6   writing signed by all parties or on the record in court.

7             PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

8        34.   The parties agree that this agreement will be considered

9   part of the record of defendant's guilty plea hearing as if the

10  entire agreement had been read into the record of the proceeding.

11   AGREED AND ACCEPTED

12   UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
13   CALIFORNIA

14   TRACY L. WILKISON
     Acting United States Attorney

15

16                                              1/12/2021

17   JOSEPH T. MCNALLY                          Date
     Assistant United States Attorney

18                                              12/29/20

19   LYNN KNEE                                  Date
     Defendant

20                                              12-25-20

21   ROBERT REXRODE                             Date
     Attorney for Defendant

22

23

24

25

26

27

28

                                  23

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          12/29/20
LYNN KNEE                          _____
Defendant                          Date

24

1

CERTIFICATION OF DEFENDANT'S ATTORNEY

2      I am Lynne Knee's attorney.  I have carefully and thoroughly

3  discussed every part of this agreement with my client.  Further, I

4  have fully advised my client of her rights, of possible pretrial

5  motions that might be filed, of possible defenses that might be

6  asserted either prior to or at trial, of the sentencing factors set

7  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8  provisions, and of the consequences of entering into this agreement.

9  To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is an informed and voluntary one; and the factual basis set

14 forth in this agreement is sufficient to support my client's entry of

15 a guilty plea pursuant to this agreement.

16

17  ROBERT REXRODE                          _12·29-20_
                                            Date
18  Attorney for Defendant

19

20

21

22

23

24

25

26

27

28

25

**CERTIFICATE OF SERVICE**

I, **Catherine Wilkinson**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT FOR DEFENDANT LYNN KNEE**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

Robert Rexrode
427 C Street, Suite 400
San Diego, CA 92101-5123

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☐ Via email, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **February 8, 2021**, at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

*Catherine M. Wilkinson*
Catherine M. Wilkinson
Legal Assistant